IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DIXIE TARR,
        Plaintiff,

v.	No: 5:04cv395/SPM/MD

JO ANNE B. BARNHART,
Commissioner of Social Security,
        Defendant.
_____

REPORT AND RECOMMENDATION

        This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Tarr's application for disability insurance benefits under Title II of the Act.

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits claiming an onset date of May 15, 2000.  The application was denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ).  A hearing was held on February 12, 2003 at which plaintiff was represented by counsel and testified.  A vocational expert also testified.  The ALJ entered an unfavorable decision on August 19, 2003 and the Appeals Council declined review, making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe conditions of arthritis, hypertension, status post left hip replacement, lower cervical and thoracic degenerative disc disease, status post proximal tibial fracture, and L4-5 spondylolesthesis with degenerative facet disease, but that she did not have a condition or combination of conditions that met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that plaintiff's testimony concerning her limitations was not wholly credible; that plaintiff had the residual functional capacity to sit for 6 to 8 hours, stand for 2 to 4 hours and lift up to 10 pounds, but could not do any climbing or work at heights around dangerous machinery; that she had the residual functional capacity to perform a range of sedentary light work; that she was able to perform her past relevant work as an apartment supervisor; and that she was not under a disability as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence.  *Falge, supra*.  The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is

premised upon correct legal principles.  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).  In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted).  Findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

> 4. Does the individual have any impairments which prevent past relevant work?
>
> 5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The primary medical issue raised by plaintiff in this appeal relates to her carpal tunnel syndrome. Therefore the focus of this medical history will be on that condition. Other conditions will be noted as relevant.

Plaintiff was in a severe motorcycle accident in the late 1970's, and thereafter suffered from ongoing problems with her back, neck, hips, knees and feet. The bulk of her medical record deals with these problems. In addition to those conditions, all of which the ALJ discussed, plaintiff testified at the evidentiary hearing that she had suffered from carpal tunnel syndrome (CTS) since 1999 (Tr. 56-57). One of the reasons she gave for retiring from her position as a cashier at WalMart was that she could not do anything with her right hand (*id.*). Her chiropractor treated her for CTS, and some unnamed doctors in Tampa diagnosed the condition (Tr. 69), but no date was given for that diagnosis, nor are there any medical records confirming it.

The first mention in the medical record of any problems relative to plaintiff's right hand or arm is on October 25, 1998 when plaintiff saw Dr. McIlwain at her local clinic. She complained of mild pain in her hands and wrists (along with her more

serious problems with her back and legs), but the only notation in the assessment was osteoarthritis in the neck and knees. More than two years later, on January 30, 2001 plaintiff was seen by Dr. Lewandowski, and reported right hand numbness. On physical examination Dr. Lewandowski noted only that plaintiff had normal muscle bulk and strength in her arms bilaterally (Tr. 177-78).

Six months later plaintiff was examined at the request of the state agency by Dr. Guy. Along with her numerous other problems, she told him that she had been diagnosed with CTS, that she dropped things, and that her right hand went to sleep (Tr. 188-89). Dr. Guy assessed probable CTS but noted that he saw "no evidence of weakness, no muscle wasting in the right hand or forearm on examination today." (Tr. 191).

In the meantime plaintiff had begun seeing Paul Maddox, M.D., an orthopedic surgeon for her back and leg problems. Dr. Madox treated her from June 2000 through the time of the ALJ's decision. Plaintiff's complaints to Dr. Maddox were limited to her back and leg problems, and did not indicate any hand or arm problems. In December 2001 Dr. Maddox performed a total hip replacement (Tr. 292), and followed plaintiff thereafter. Her hip did well although she continued to complain of back pain (Tr. 301-02). Then, on April 29, 2003 she told Dr. Maddox that she was having what appeared to be nerve-related symptoms in her hands and arms, and he ordered a nerve conduction study (Tr. 314). The study showed mild to moderate CTS bilaterally (Tr. 310-13). There are no medical records after that study.

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to find that her CTS was severe at step two of the sequential analysis, and in finding that she could do her past relevant work as an apartment manager, and that plaintiff was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The

issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. **Carpal Tunnel Syndrome.**

Plaintiff first contends that the ALJ erred in not accepting her CTS as a severe condition. At step two of the evaluation sequence the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. § 1520(c). The burden at this step is on the claimant. *Chester v. Bowen, supra.* The Commissioner's regulations provide:

> What we mean by an impairment(s) that is not severe.
> (a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521. The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe. The ruling provides in part:

> As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of

> slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

SSR 85-28, 1985 WL 56856.

In *Brady v. Heckler,* 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the same test later adopted in SSR 85-28 to hold that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further interpreted the regulations to mean that "only claims based on the most *trivial* impairments [can] be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)(emphasis added). It is not for the reviewing court to say that plaintiff's apparent CTS under these circumstances is or is not trivial, only that the ALJ must properly justify his finding on that issue. Finally, the ALJ's findings must be supported by substantial evidence.

The thrust of plaintiff's argument here is that the ALJ seemed to have gone out of his way to minimize her CTS condition. As an example, she cites the ALJ's description of the condition as one she "recently developed" (Tr. 28), which she says is not correct. That, of course, is a matter of fact to be determined by the ALJ. As the medical history set out above shows, plaintiff did have very occasional complaints of pain and/or numbness in her right hand, but other than her own statement that some doctors had diagnosed the condition, the condition was barely mentioned over the period of nearly five years covered by the medical record, and was not officially diagnosed by a physician of record until May 2003. Thus, this court cannot say that it was unreasonable for the ALJ to characterize plaintiff's CTS as a recent development.

The ALJ did consider the condition, and found that "it has been noted to be mild to moderate and apparently does not preclude her from engaging in housework, cooking and crocheting" (Tr. 29).  This conclusion was supported by substantial record evidence.  Although plaintiff testified that she dropped things, and that her inability to pick up things was a major reason for her retiring from her job in 1999, the record significantly omits any mention of anything so serious at or around that time.  She first mentioned the condition to a physician in 2001 (Tr. 177-78), and barely mentioned it again until 2003.  Both Dr. Lewandowski and Dr. Guy were told of hand and arm problems, but neither found any positive signs to support the claim, and in December 2002 plaintiff's chiropractor noted that she had normal muscle strength in her wrists and fingers (Tr. 236).

*McCruter v. Bowen*, 791 F.2d 1544 (11th Cir. 1986), cited by the Commissioner, in instructive.  There the court explained that just because someone has what would be considered a severe medical condition, it does not follow that such condition must be severe as it pertains to employability.  The court used the example of a stock analyst who had lost his legs - an obvious and serious medical condition - but who could still practice his profession notwithstanding his obvious disability.  The court noted that the question of severity must be related to the ability to work, not just to the existence of a medical condition.

Here plaintiff complained of hand problems, and her condition was finally diagnosed in 2003, after the evidentiary hearing before the ALJ.  But the test readings showed the condition to be mild to moderate, and the medical record did not otherwise confirm that the condition in and of itself had any adverse effect on the plaintiff's ability to work.  At the same time, plaintiff testified that she quit her job approximately four years before the CTS diagnosis because she could not pick things up, which is inconsistent with anything in the medical record.  The plaintiff has the burden of showing that a condition is severe at step two.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).

The resolution of the contradictory facts was particularly within the realm of the ALJ's fact finding, and his decision that plaintiff had not carried her burden was supported by substantial record evidence.

  2. <u>**Past Relevant Work.**</u>

  For her second ground on appeal plaintiff contends that the ALJ erred in accepting the testimony of a vocational expert that plaintiff could perform the duties of her past relevant work - an apartment complex manager - where the hypothetical was flawed. As the court is well aware, a hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence. *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985). However, "the ALJ [is] not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004). Here the thrust of plaintiff's argument is that the ALJ found that plaintiff could work as an apartment manager *as she had previously performed that job*, but that he misstated the requirements of the job as performed.

  First, she argues that her apartment management job required her to lift 20 pounds, but that the ALJ found that she had the residual functional capacity to lift only 10 pounds. Thus, she says, the ALJ's decision was internally inconsistent. It is true that in her work history report plaintiff marked the "20 lbs." box when asked to give the heaviest weight lifted (Tr. 132), but in describing her lifting and carrying responsibilities she wrote "not generally job related, however at times minor lifting was required." (*Id*.). Moreover, she did not confirm the 20 pound claim at the hearing:

  Q (ALJ): How many apartments were in this complex?

  A (plaintiff): If I remember correctly we had 230 apartments.

  Q:    And you probably didn't do any lifting over ten pounds?

  A:    No, sir. Not there. No, sir.

(Tr. 44). Plaintiff then went on to testify that she had other people to do maintenance and that she did no repairs (Tr. 44-45). Thus, her argument that she had to lift 20 pounds as an apartment manager is belied by her own sworn testimony, and the ALJ's inclusion of a ten pound lifting limit in the hypothetical was supported by the record.

Second, plaintiff contends that the ALJ misstated the amount of time she would have to stand or walk. In her work history report she indicated that the apartment manager job required her to walk and stand for six hours per day (Tr. 132). However, she testified at the hearing that she would spend half of the workday standing or walking, and half sitting in the office, depending on how many apartments she had to show, but that she had the option to sit or stand at her leisure (Tr. 44). There was a good deal of further testimony in which her counsel tried to show that she really stood more than half the day, and plaintiff qualified her answers by saying she did not remember exactly, and that it depended on how busy she was (Tr. 65 - 68). Clearly it is up to the fact finder to decide which version more accurately described plaintiff's job. The ALJ did so, and the hypothetical put to the vocational expert asked her the assume plaintiff could sit six to eight hours and stand two to four hours, to which the vocational expert responded that this was consistent with the job of a residence manager. The ALJ's finding on this issue was supported by substantial record evidence.

Third, plaintiff faults the ALJ for including a no climbing restriction in his hypothetical. Plaintiff points out that she stated on her work history report that she was required to climb one hour per day (Tr. 132). Her testimony at the hearing omitted any reference to climbing, however. She testified generally that she would inspect and show apartments, oversee and supervise maintenance, collect rent, spend time in the office, keep records, make bank deposits, and arrange for lawn care and maintenance. She was not specifically asked about what she meant by the climbing she described in her work history report.

The Dictionary of Occupational Titles (DOT) published by the U. S. Department of Labor, lists the job of "Manager, Apartment House."  Under the title "Physical Demands" it shows "Climbing" as being "Not Present - Activity or condition does not exist."   DOT, 186.167-018.   What the DOT means by climbing is nowhere explained, but the meaning can be gleaned from how it is used in the other job descriptions where it appears:  Tree Pruner (408.684-018) "May climb trees, using climbing hooks and belts, or climb ladders . . . ."; Forest Products Gatherer (453.687-010) "May climb trees to reach cones and boughs, using climbing belt and climbing spurs."; Rigger (921.664-014)  "May climb wooden spars, using climbing spurs and safety rope . . . ."; Switch Inspector (952.381-010) "Climbs pole, using ladder or climbing spurs . . . ."; Roof Fitter (806.284-126) "Climbs scaffolding . . . ."; Tree Trimmer (408.664-010) "Climbs trees . . . using climbing equipment."; Yard Coupler (910.664-010) "Climbs ladder . . . ."; Derrick Worker, Well Service (930.683-018) "Climbs ladder . . . ."; Cable Television Line Technician (821.261-010) "Climbs utility pole . . . ."; Fumigator (383.361-010) "Climbs ladder . . . ."; Blower Insulator (863.664-010) "Climbs ladder or erects scaffold . . . ."; Chimney Repairer (899.364-010) "Climbs ladders to roof . . . ."; Brake Coupler, Road Freight (910.367-010) "Climbs ladder . . . ."; Stage Technician (962.261-014) "Climbs ladder or scaffolding . . . ."; High Rigger (962.664-010) "Climbs ladders, poles, or scaffolding . . . ."; Boilermaker Fitter (805.361-014) "Climbs framework or ladders . . . ."; Line Erector (821.361-018) "Climbs erected poles or towers . . . ."; Line Repairer (821.361-026) "Climbs poles . . . ."[1]

It is obvious from this that climbing as used in occupational terms is something that requires mobility, strength, balance, and dexterity.  Plaintiff did not

---

[1] The only job description that seems to be out of place with the foregoing is that of "[Motion Picture] Double" (961.364-010) "Imitates gestures or mannerisms of star performer, such as in standing, walking, climbing stairs, and mounting or riding horse."  Listed under physical demands is "Climbing - Occasionally," but the list does not explain whether this relates to climbing stairs or mounting a horse, which obviously takes greater dexterity.  All other references to stairs in the DOT relate to building, carpeting, tiling, and similar construction-related activities.

tell the ALJ that she was ever required to climb ladders, scaffolding, towers, or poles, something she surely would have mentioned if that were part of her job, either specifically or generally. The vocational expert testified that plaintiff could do the job of apartment supervisor as she described it at the hearing, and plaintiff made no mention of climbing. Plaintiff's testimony at the hearing was inconsistent in several respects with what she reported in her work history report. Because of those inconsistencies, because she mentioned nothing resembling climbing in her testimony, because the DOT's description of her job made no mention of climbing as a physical demand, and because there was such a wide disparity between the job of apartment manager and the types of jobs the DOT listed as requiring climbing, it was not necessary for the ALJ to clarify what plaintiff meant when she filled out her work history form.

For all the foregoing reasons, the hypothetical question posed to the vocational expert properly described the residual functional capacity limitations that the ALJ ultimately found. The plaintiff has not shown that the ALJ erred in failing to find that her CTS was severe at step two of the sequential analysis, or in finding that she could do her past relevant work as an apartment manager. Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 17th day of June, 2005.

/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11 $^{th}$ Cir. 1988).**